UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN MOJICA,

                                CASE NO.  09-14615
      Plaintiff,               HON. LAWRENCE P. ZATKOFF

v.

UNITED PARCEL SERVICE,

      Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 25, 2011

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant's motion for summary judgment or, in the alternative, motion to dismiss [dkt 27], Defendant's motion for leave to file exhibits in the traditional manner [dkt 31], Plaintiff's objections to Defendant's exhibits [dkt 34], Defendant's motion to strike Plaintiff's supplemental brief [dkt 36], and Defendant's motion for leave to file supplemental authority [dkt 39].  The parties have fully briefed each motion except for Defendant's motion for leave to file supplemental authority, but the Court need not wait for Plaintiff's response to decide the motions.  The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted.  For the reasons set forth below, Defendant's motion for summary judgment or, in the alternative, motion to dismiss [dkt 27] is GRANTED, and all remaining motions

are DENIED AS MOOT.

## II. BACKGROUND

Plaintiff began working for United Parcel Service Inc. ("UPS") in 1990 as a part-time Loader/Unloader and became a Service Provider (*i.e.*, package car driver) in 1994. His job included picking up and delivering packages from UPS's customers and driving a UPS brown package car. As a member of the International Brotherhood of Teamsters, Local 243 ("Union"), his employment was governed by a collective bargaining agreement ("CBA"). Plaintiff was not an at-will employee; rather, UPS could only discharge Plaintiff for just cause.

On Plaintiff's July 29, 2009, dispatch, he decided not to deliver a package because he had security concerns about the package and location, fearing that the package contained illegal drugs. Plaintiff informed UPS by way of entry on a digital device that he had delivered the package, and he proceeded with his next stop. Plaintiff avers that he accidentally marked the package as delivered, and that there was no way to change his entry. Following a text message inquiry from a UPS Office Management Specialist regarding the location of the package, Plaintiff responded that he left it on the porch.

Later that morning, Plaintiff contacted a UPS Center Manager and informed him that he had not delivered the package and feared that it contained drugs. During their conversation, the Center Manager stated that "the first thing [he] would have done was to deliver the package and then let the center know about what was suspected." The Center Manager later told Plaintiff that he was contacting UPS Loss Prevention to pick up the package and take it off Plaintiff's package car. Unbeknownst to UPS, Plaintiff then opened the package and discovered that it contained plastic bags with what appeared to contain marijuana. UPS's Loss Prevention Manager called Plaintiff on his

cellular phone to inform Plaintiff that he would meet him and remove the package from Plaintiff's vehicle. The Loss Prevention Manager did not learn that Plaintiff had opened the package until he arrived at Plaintiff's location and took possession of the package.

After discussing the relevant events with Plaintiff later that day, UPS believed the evidence and circumstances suggested that Plaintiff was planning to steal the package after claiming it was delivered. Later on July 29, 2009, UPS told Plaintiff that his employment would be terminated, but that he was given the opportunity to resign in lieu of discharge, and to let UPS know the next day what he elected. Plaintiff knew when he left work on July 29, 2009, that he was being discharged, and that UPS was offering him the option of resigning if he were to make that election the following day. On July 30, 2009, Plaintiff told UPS's Center Manager that he would not resign, and he understood that he was discharged. On July 30, 2009, UPS issued Plaintiff a discharge letter for just cause under the CBA, stating that Plaintiff's termination was effective immediately.

Plaintiff claims that UPS violated the Michigan Whistleblowers' Protection Act ("WPA"), Mich. Comp. Laws § 15.461 *et seq.*, because he was discharged when on the verge of reporting a violation of law, and that UPS discharged him in violation of Michigan public policy because he was discharged for refusing to violate the law in the course of his employment.

### III. STANDARD OF REVIEW

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a plaintiff's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in the plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Advocacy Org.*

3

*for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *See also Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

## IV. ANALYSIS

### A. Whistleblowers' Protection Act

Defendant argues that Plaintiff's WPA claim is time-barred under the WPA's 90-day statute of limitations. *See* Mich. Comp. Laws § 15.363(1) ("A person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after the occurrence of the alleged violation of this act.").

The effective date of Plaintiff's termination was July 30, 2009, meaning that Plaintiff had until October 28, 2009, to file his WPA claim. *See Mortimer v. Alpena Cnty. Prob. Ct. & Alpena Cnty.*, No. 290958, 2010 Mich. App. LEXIS 987, at *7 (Mich. Ct. App. May 2, 2010) ("[Plaintiff's] claim accrued on the effective date of her termination[.]"); *Parker v. Cadillac Gage Textron, Inc.*, 214 Mich. App. 288, 289 (1995) ("A claim of discriminatory discharge accrues on the date the plaintiff is discharged.  The last day worked is the date of discharge.  Subsequent severance or vacation pay does not affect the date of discharge.") (citations omitted).  Plaintiff, however, did not file his suit until October 30, 2009, after the statute of limitations had expired.  While Plaintiff argues that the statute of limitations did not begin to run until he received UPS's discharge letter on August 5, 2009, because he was "hanging in limbo" with respect to his employment status during the interim, this argument contradicts Plaintiff's statements made during his deposition, in which he stated that he knew he was being discharged on July 30, 2009.  *See Mortimer*, No. 290958, 2010 Mich. App. LEXIS 987, at *7 (holding that the plaintiff's discharge did not occur following her "suspension" from employment because it had not yet been determined whether she would be discharged).  Accordingly, Plaintiff's WPA claim is dismissed.

**B. Public Policy**

Defendant also argues that Plaintiff's public policy claim should be dismissed because such claims are only available to at-will employees.

"In general, in the absence of a contractual basis for holding otherwise, either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason." *Suchodolski v. Michigan Consol. Gas Co.*, 412 Mich. 692, 694–95 (1982) (internal citation omitted). "However, an exception has been recognized to that rule, based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id.* "In addition to statutory causes of action for violation of explicit prohibitions, causes of action have been implied where the employee was discharged for failure or refusal to violate a law in the course of employment." *Phillips v. Butterball Farms Co.*, 448 Mich. 239 (1995).

However, "this tort theory of liability for wrongful discharge arises only in the context of employment at will . . . the principle has never been extended to a just-cause employee and such an employee is afforded this protection by virtue of the fact that he cannot be discharged but for cause." *Manczak v. City of Bay City*, No. 199395, 1998 WL 1992514, at *1 (Mich. Ct. App. Mar. 27, 1998) ("Since it was undisputed that plaintiff was a just-cause employee under a collective-bargaining agreement, the trial court did not err in finding that plaintiff could not maintain an action for violation of public policy, and in dismissing this cause of action for failure to state a claim upon which relief could be granted . . . .").

Here, it is undisputed that Plaintiff was a just-cause employee under a collective bargaining agreement. Thus, Plaintiff was not an at-will employee, and his claim that he was discharged in violation of Michigan's public policy must therefore be dismissed.

## V. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that Defendant's motion for summary judgment or, in the alternative, motion to dismiss [dkt 27] is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion for leave to file exhibits in the traditional manner [dkt 31] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiff's objections to Defendant's exhibits [dkt 34] is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's motion to strike Plaintiff's supplemental brief [dkt 36] is DENIED AS MOOT

IT IS FURTHER ORDERED that Defendant's motion for leave to file supplemental authority [dkt 39] is DENIED AS MOOT

IT IS FURTHER ORDERED that this case is now closed.

IT IS SO ORDERED.

    s/Lawrence P. Zatkoff
    LAWRENCE P. ZATKOFF
    UNITED STATES DISTRICT JUDGE

Dated: May 25, 2011

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 25, 2011.

    s/Marie E. Verlinde
    Case Manager
    (810) 984-3290